UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS COATES,<br><br>    Plaintiff,<br><br>    v.<br><br>ATIEVA USA, INC. SEVERANCE BENEFIT PLAN,<br><br>    Defendant. | Case No. 20-cv-04176-SK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Regarding Docket Nos. 13, 14 |

Plaintiff Douglas Coates ("Plaintiff") filed a complaint pursuant to the Employee Retirement Income Security Act ("ERISA") against the severance benefit plan of his former employer, Atieva USA, Inc. Severance Benefit Plan ("Defendant") on June 24, 2020. (Dkt. 1.) Plaintiff filed an amended complaint ("FAC") on July 7, 2020. (Dkt. 7.) Both parties have consented to the jurisdiction of the Undersigned pursuant to 28 U.S.C. § 636. (Dkts. 8, 10.) On August 10, 2020, Defendant filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 13.) Alternatively, Defendant moves for summary judgment. (*Id.*) Plaintiff opposes the motion. (Dkt. 14.) The Court held a motion hearing on September 14, 2020. (Dkt. 19.) Having considered the submissions of the parties, the record in the case, and the relevant legal authorities, and having had the benefit of oral argument, the Court HEREBY GRANTS Defendant's motion to dismiss WITHOUT PREJUDICE to refiling based on Plaintiff's Change of Control theory subsequent to the limited discovery allowed by the Court. The Court sets forth its reasoning in full below.

**BACKGROUND**

Plaintiff headed the finance department of Atieva USA, Inc., doing business as Lucid

Motors USA, Inc. (Dkt. 7 ¶ 6.) Plaintiff participated in Atieva USA, Inc.'s Severance Benefit Plan (the "Plan"). (*Id.*; *Id.* (Ex. 1).) The Plan provides that "'Change of Control' shall have the meaning set forth in Section 2(i) of the Parent's 2014 Share Plan as of the Effective Date and shall refer to a Change of Control Transaction occurring after the Effective Date." (Dkt. 7 (Ex. 1).) The Effective Date of the Plan is April 22, 2019. (*Id.*) Section 2(i) of the Atieva, Inc. 2014 Share Plan in turn states:

> 'Change of Control' means (1) a sale of all or substantially all of the Company's assets, or (2) any merger, consolidation or other business combination transaction of the Company with or into another corporation, entity or person, other than a transaction in which the holders of at least a majority of the voting shares of the Company outstanding immediately prior to such transaction continue to hold (either by such shares remaining outstanding or by their being converted into voting shares of the surviving entity) a majority of the total voting power represented by the shares of the Company (or the surviving entity) outstanding immediately after such transaction, (3) the direct or indirect acquisition (including by way of a tender or exchange offer) by any person, or persons acting as a group, of beneficial ownership or a right to acquire beneficial ownership of shares representing a majority of the voting power of the then outstanding shares of the Company, or (4) a contested election of Directors, as a result of which or in connection with which the persons who were Directors before such election or their nominees (the "Incumbent Directors") cease to constitute a majority of the Board; provided however that if the election or nomination for election by the Company's shareholders, of any new Director was approved by a vote of at least 50% of the Incumbent Directors, such new Director shall be considered as an Incumbent Director.

(Dkt. 13-1.) The Plan also provides that "'Constructive Termination' means the Participant resigns (resulting in a Separation from Service) because one of the following events or actions is undertaken without the Participant's written consent: […]

> (iv) a material reduction of Participant's duties, authority or responsibilities relative to Participant's duties, authority or responsibilities as in effect immediately prior to such reduction, provided that such a 'reduction' shall not be deemed to occur if Participant's duties, authority and responsibilities with respect to the successor subsidiary or division of the parent entity following a Change of Control are substantially similar to Participant's duties, authority and responsibilities with respect to the business of the Company or the Parent immediately prior to the Change of Control, and provided further that a mere change of title shall not constitute such a reduction."

(Dkt. 7 (Ex. 1).) The Plan further establishes that

2

> An event or action will not give the Participant grounds for Constructive Termination unless (A) the Participant gives the Company written notice within 30 days after the initial existence of the event or action that the Participant intends to resign in a Constructive Termination due to such event or action; (B) the event or action is not reasonably cured by the Company within 30 days after the Company receives written notice from the Participant; and (C) the Participant's Separation from Service occurs within 90 days after the end of the cure period.

(*Id.*) The Plan defines "Involuntary Termination Without Cause" to mean "a Participant's involuntary termination of employment by the Company, resulting in a Separation from Service, for a reason other than death, disability, or Cause." (*Id.*) Finally, a "Change of Control Termination" under the Plan is "(i) an Involuntary Termination Without Cause, or (ii) a Constructive Termination, in either case that occurs within the period starting three months prior to a Change of Control and ending on the first anniversary of the Change of Control." (*Id.*)

Plaintiff alleges that a Change of Control occurred within twelve months of August 15, 2019. (Dkt. 7 ¶ 7.) Plaintiff further alleges that, on or before August 15, 2019, he received both oral and written notice that his duties, authority, and responsibilities had been materially reduced. (*Id.* ¶ 8.) Plaintiff asserts that the combination of the Change of Control and the reduction in duties entitled him to severance benefits under the terms of the Plan. (*Id.* ¶ 8.) On August 21, 2019, Plaintiff's counsel sent Defendant a Notice to Cure informing Defendant of the reduction in duties and providing a 30-day window to alter its actions. (*Id.* ¶ 9; *Id.* (Ex. 2).) On September 17, 2019, Defendant responded to Plaintiff's Notice to Cure via email, indicating that Defendant believes there was no Change of Control and therefore Plaintiff is not entitled to benefits. (*Id.* ¶ 10; *Id.* (Ex. 3).) On September 27, 2019, Plaintiff submitted a letter of resignation in which he stated: "I hereby submit my resignation of employment […] My resignation is a Constructive Termination (resulting in a Separation of Service), and a Qualifying Termination as those terms are defined" in the Plan. (*Id.* (Ex. 6).)

On October 7, 2019, Plaintiff's counsel sent a letter to Defendant demanding benefits under the Plan. (*Id.* ¶ 11; *Id.* (Ex. 4).) Defendant's counsel responded on January 3, 2020, denying the requested benefits. (*Id.* ¶ 12; *Id.* (Ex. 5).) Plaintiff's counsel responded with an appeal of the denial of benefits and request for documents on January 10, 2020. (*Id.* ¶ 13; *Id.* (Ex.

6).) After receiving the documents, Plaintiff's counsel responded with a supplemental appeal on February 20, 2020. (*Id.* ¶ 14; *Id.* (Ex. 7).) Defendant denied Plaintiff's appeal on April 27, 2020. (*Id.* ¶ 15; *Id.* (Ex. 8).) Plaintiff's FAC alleges a single cause of action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking to recover the benefits he alleges he is due under the Plan and a clarification of his rights under the Plan. (Dkt. 7 ¶¶ 16-21.)

Defendant moves to dismiss the FAC because there has been no qualifying Change of Control since the effective date of the plan and thus Plaintiff is not eligible for severance benefits. (Dkt. 13.) Defendant contends that no transaction meeting the Plan's definition of a Change of Control has occurred since the effective date of the Plan, April 22, 2019. (Dkt. 13.) Defendant acknowledges that a Change of Control did occur three weeks before the effective date of the Plan, on April 2, 2019. (*Id.*) However, Plaintiff's FAC provides no allegations or evidence establishing that a Change of Control occurred on that date.

Plaintiff opposes the motion to dismiss and counters that the Plan's definition of Change of Control incorporates the Atieva, Inc. 2014 Share Plan and should therefore be read as incorporating the Share Plan's Effective Date of May 14, 2014. (Dkt. 14.) Under Plaintiff's interpretation, the Change of Control on April 2, 2019, qualifies Plaintiff to receive benefits under the Plan because Plaintiff's termination was a Constructive Termination based on Change of Control. (*Id.*) In the alternative, Plaintiff argues that he was involuntarily terminated under the Plan, entitling him to benefits. (*Id.*) In support of this argument, Plaintiff contends that the terms of the Plan show that "a constructive termination is an involuntary termination without cause, by a different name." (*Id.*)

**DISCUSSION**

**A.  Legal Standards.**

Defendant brings its motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a motion to dismiss where the pleadings fail to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v.*

1    *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule
2    8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires
3    more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
4    will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*,
5    478 U.S. 265, 286 (1986)).  Rather, a plaintiff must instead allege "enough facts to state a claim to
6    relief that is plausible on its face." *Id.* at 570.

7    "The plausibility standard is not akin to a probability requirement, but it asks for more than
8    a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that
9    are merely consistent with a defendant's liability, it stops short of the line between possibility and
10   plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
11   *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to
12   state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g.*,
13   *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*
14   *Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

15   "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for
16   all purposes." Fed. R. Civ. P. 10(c).  When deciding a motion to dismiss, the district court must
17   limit itself to the evidence in the pleadings or convert the Rule 12(b)(6) motion into a Rule 56
18   motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  In
19   weighing a motion to dismiss, courts may consider "certain materials – documents attached to the
20   complaint, documents incorporated by reference in the complaint, or matters of judicial notice –
21   without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing
22   *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th
23   Cir. 1994); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 1999)).  Even
24   where a document is not attached to a complaint, it may be incorporated by reference if the
25   plaintiff extensively refers to the document or the document forms the basis for the plaintiff's
26   claim. *Id.*; *Van Buskirk*, 284 F.3d at 980.

27   **B.    Analysis.**

28       **1.    Motion to Dismiss versus Motion for Summary Judgment.**

5

Here, the Plan is both attached to the FAC and incorporated by reference extensively in the FAC; the Plan forms the basis for Plaintiff's claims. Similarly, the Atieva, Inc. 2014 Share Plan is incorporated by reference because it is referred to both in the FAC and in the particular Plan terms subject to dispute in this case. The Atieva, Inc. 2014 Share Plan therefore also forms the basis for Plaintiff's claims. The Court considers these two documents in weighing Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In so doing, the Court does not convert the motion to a motion for summary judgment. *Ritchie*, 342 F.3d at 908.

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), "permits an ERISA participant or beneficiary to bring an action to recover benefits, to enforce is rights under the plan, or to clarify his rights to future benefits under the plan." *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1117 (N.D. Cal. 2018). To survive the motion to dismiss, Plaintiff must provide a theory of interpretation for the Plan that plausibly suggests Defendant improperly denied benefits. "ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir. 1985)). Instead, "Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws" in doing so. *Id.*; *see also Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1162 (D. Ariz. 2005) ("Federal common law principles of contract interpretation guide the interpretation of an ERISA retirement plan") (citing *Richardson*). Thus, courts give terms in a plan in their ordinary meaning, as they would be understood by a person of average intelligence and experience. *Richardson*, 112 F.3d at 985. In the event of a dispute, courts look first to the explicit language of the agreement, then to context. *Id.* "Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory." *Id.*

### 2. Involuntary Termination Without Cause.

Section 10(j) of the Plan establishes that two types of termination may lead to eligibility for benefits: a Constructive Termination or Involuntary Termination Without Cause. (Dkt. 7 (Ex. 1).) Plaintiff's primary theory that he is entitled to Plan benefits rests on the assertion that his

6

termination was a Constructive Termination based on a Change of Control. However, Plaintiff simultaneously proposes the alternative theory that his termination was also an Involuntary Termination Without Cause. In suggesting that the termination may be both a Constructive Termination and an Involuntary Termination Without Cause at once, Plaintiff proposes that both types of termination may in fact be involuntary, so whether the Company or the Participant initiated the termination is irrelevant.

The plain terms of the Plan destroy this theory. Plaintiff argues that the terms of the Plan show that "a constructive termination is an involuntary termination without cause, by a different name." (Dkt. 14) However, the Plan defines "Constructive Termination" and "Involuntary Termination Without Cause" as two distinct terms. First, the Plan establishes that "'Constructive Termination' means that *the Participant resigns* (resulting in a Separation from Service) because one of the following events or actions is undertaken without the Participant's written consent: […]

> (iv) a material reduction of Participant's duties, authority or responsibilities relative to Participant's duties, authority or responsibilities as in effect immediately prior to such reduction, provided that such a 'reduction' shall not be deemed to occur if Participant's duties, authority and responsibilities with respect to the successor subsidiary or division of the parent entity following a Change of Control are substantially similar to Participant's duties, authority and responsibilities with respect to the business of the Company or the Parent immediately prior to the Change of Control, and provided further that a mere change of title shall not constitute such a reduction.

(Dkt. 7 (Ex. 1)) (emphasis added). The Plan then describes "Involuntary Termination Without Cause" to mean "a Participant's involuntary termination of employment *by the Company*, resulting in a Separation from Service, for a reason other than death, disability, or Cause." (*Id.*) (emphasis added). As the language of the Plan makes clear, Constructive Termination is effective termination when a series of conditions are met and the Participant resigns voluntarily based on those conditions. In contrast, Involuntary Termination Without Cause occurs when a Participant is involuntarily terminated by the Company. These terms have separate meanings under the clear language of the Plan. Plaintiff's convoluted theory that the terms are equivalent because the constructively terminated employee may not have wanted to resign is unavailing.

Finding that the term Constructive Termination duplicates the term Involuntary

Termination Without Cause would violate the canon of construction that written instruments should not be read to create redundant or superfluous terms. *See Richardson*, 112 F.3d at 985; *Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 487 (2011) ("The Court has a duty to construe every provision of a written instrument as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant.") Plaintiff's theory regarding the overlapping meaning of "Constructive Termination" and "Involuntary Termination Without Cause" requires a reading of the Plan that renders a key term nugatory. Here, Plaintiff resigned his position. Under such circumstances, the only cognizable avenue for relief under the terms of the Plan must rely on the theory of Constructive Termination based on Change of Control. The Court therefore concludes that Plaintiff has not stated a claim for a finding of improper denial of benefits under his alternate theory that he is entitled to benefits because an Involuntary Termination Without Cause occurred.

### 3. Constructive Termination Based on Change of Control.

Plaintiff's next argument that he is entitled to benefits relies on the proposition that he was subject to a Constructive Termination based on a Change of Control. However, Plaintiff's current pleadings do not establish when the Change of Control he alleges occurred; therefore, Plaintiff has not stated a claim for relief based on the Change of Control theory set forth in his current pleadings.

The Plan establishes that "'Change of Control' shall have the meaning set forth in Section 2(i) of the Parent's 2014 Share Plan as of the Effective Date and shall refer to a Change of Control Transaction occurring after the Effective Date." (Dkt. 7 (Ex. 1).) The Effective Date of the Plan is April 22, 2019. (*Id.*) Section 2(i) of the Atieva, Inc. 2014 Share Plan in turn states:

> 'Change of Control' means (1) a sale of all or substantially all of the Company's assets, or (2) any merger, consolidation or other business combination transaction of the Company with or into another corporation, entity or person, other than a transaction in which the holders of at least a majority of the voting shares of the Company outstanding immediately prior to such transaction continue to hold (either by such shares remaining outstanding or by their being converted into voting shares of the surviving entity) a majority of the total voting power represented by the shares of the Company (or the surviving entity) outstanding immediately after such transaction, (3) the direct or indirect acquisition (including by

8

> way of a tender or exchange offer) by any person, or persons acting as a group, of beneficial ownership or a right to acquire beneficial ownership of shares representing a majority of the voting power of the then outstanding shares of the Company, or (4) a contested election of Directors, as a result of which or in connection with which the persons who were Directors before such election or their nominees (the "Incumbent Directors") cease to constitute a majority of the Board; provided however that if the election or nomination for election by the Company's shareholders, of any new Director was approved by a vote of at least 50% of the Incumbent Directors, such new Director shall be considered as an Incumbent Director.

(Dkt. 13-1.)  The Effective Date of the Ateiva Inc. 2014 Share Plan is May 14, 2014.  (Dkt. 14.)

Plaintiff argues that the "Effective Date" referred to in the Change of Control provision of the Plan is the Effective Date of the Ateiva Inc. 2014 Share Plan.  Plaintiff's argument therefore relies on measuring the operative Effective Date against the date of the Change of Control that Plaintiff alleges entitles him to benefits.  However, the question of whether there has been a Change of Control cannot be resolved on the basis of Plaintiff's current pleadings.  Though the Effective Dates of both plans have been established, Plaintiff has not adduced evidence demonstrating when the alleged Change of Control took place.  Defendant asserts that the Change of Control occurred on April 2, 2019.  (Dkt. 13.)  However, Plaintiff argued that this factual issue cannot be resolved on a motion to dismiss, and if the Court were to treat the issue as one for summary judgment, Plaintiff is entitled to discovery.  As discussed with the parties at oral argument, the Court permits Plaintiff to conduct limited discovery regarding when the Change of Control took place.  To the extent that Plaintiff is able to adduce sufficient evidence to support his argument based on Change of Control, Plaintiff may file a second amended complaint.  The Court therefore grants the motion to dismiss without prejudice as to Plaintiff's Change of Control theory.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss.  If Plaintiff is able to gather sufficient evidence of the Change of Control, Plaintiff may file a second amended complaint on its Change of Control theory.  Plaintiff must conclude this discovery by November 9, 2020, and file a Second Amended Complaint or a Notice of Voluntary Dismissal by that date.

/ / /

/ / /

1  The Court VACATES the case management conference currently set for September 28, 2020, and will hold the Case Management Conference on December 7, 2020, at 1:30 p.m.

**IT IS SO ORDERED**.

Dated: September 23, 2020



SALLIE KIM
United States Magistrate Judge